**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**


UNITED STATES OF AMERICA          *
                                  *
v.                                *          CRIMINAL NO.  RWT-10-0029
                                  *
MARCUS HERMAN MORRIS,             *
                                  *
                                  *
   Defendant                      *
                                  *
                            **********

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS**


      The United States of America, by and through its attorneys, Rod J. Rosenstein,

United States Attorney for the District of Maryland, and Kevin L. Rosenberg, Special Assistant

United States Attorney for said District, respectfully submits this Response in opposition to the

Motion to Suppress Evidence and Statements filed by the Defendant in the above-captioned case.


      Respectfully submitted,

      Rod J. Rosenstein
      United States Attorney

      By: __/s/_____
      Kevin L. Rosenberg
      Special Assistant United States Attorney
      United States Courthouse, Suite 400
      6500 Cherrywood Lane
      Greenbelt, Maryland 20770
      (202) 445-9850

## <u>STATEMENT OF THE CASE</u>

Defendant Morris is charged in a one count indictment with possession of a firearm after having been convicted of a felony, in violation of Title 18 United States Code § 922(g). Defendant was arrested with a loaded firearm and subsequently made both oral and written statements.  He now moves to suppress all physical evidence and statements.

## STATEMENT OF FACTS

On September 10, 2009, Detective Juan Nolesco of the Prince George's County Police Department was patrolling the area of the 5700 Block of Walker Mills Rd., in Prince George's County, Maryland.  This is a high crime district.  Detective Nolesco was patrolling this area in an undercover, unmarked police car.  His police car is equipped with emergency lights and flashers.  He was dressed in plain clothes but was wearing a tactical vest with the word "POLICE" written across the chest.

At about 1:30 AM Detective Nolesco was driving his automobile up Walker Mill Road when he noticed an individual riding a bicycle in the middle of the street, veering in and out of oncoming traffic.  As Detective Nolesco continued driving his car, the individual on the bicycle once again crossed the center line, riding into oncoming traffic.  To avoid a head on collision with the bicycle rider, Detective Nolesco was forced to slam on his breaks and veer out of the path of the bicycle.

After the bicycle rider passed, Detective Nolesco made a "U-Turn," activated his emergency flashing lights, and pulled up next to the suspect on the side of the road.  Detective asked this suspect, Marcus Morris, if he was "o.k."  Morris did not respond, instead staring blankly back at the Detective.   Detective Nolesco also noticed that the suspect was wearing all black clothing, and a heavy Northface fleece jacket.  Seeing that this was early September, the Detective was suspicious of this type of heavy clothing.  Detective Nolesco then began to get out of his police car, and he asked for identification.  As he was exiting his police car, the defendant threw his bicycle to the ground and took off running away from the Detective all the while, clutching his waistband.

Detective chased the defendant, shouting to stop, but the defendant continued to flee, the whole time grabbing his waistband.  Detective Nolesco continued to shout for the defendant to stop fleeing, and eventually pulled his service weapon.  When the defendant turned around and noticed that Detective Nolesco had pulled his weapon, he finally decided to stop.  Even when he stopped and turned around, he would not take his hand from his waistband.

Detective Nolesco had the Defendant lay on the ground as he was handcuffed.  A brief pat down revealed a fully loaded .40 caliber pistol, in a holster, tucked in the Defendant's waistband.  Without questioning, the Defendant made the statement, "I just found it, you can have it," or some slight variation on that statement.

After the Defendant was arrested and transported to the police station he made a written statement.  Before making the statement he was orally advised of his *Miranda* rights, and he was given an 'advice of rights' form.  He stated that he understood his rights, wished to make a statement without a lawyer, had not been promised anything, and was not under the influence of alcohol or drugs.  He further stated that he had a college level education.   The Defendant continued on to write a page long statement admitting to possessing the firearm, as well as riding his bicycle into oncoming traffic, almost striking the Detective's automobile.

## <u>LAW & ARGUMENT</u>

Defendant Morris was not seized during the initial conversation where Detective Nolesco asked him if he was "o.k."  If the Court does rule that this question amounted to a seizure, it was still justified as the Detective had probable cause to believe the Defendant had committed several traffic violations in his presence.  If the Court rules that the Detective's observations did not amount to probable cause, he surely had a reasonable suspicion justifying an investigative stop after the Defendant's unprovoked flight while clutching his waistband.

    1.   <u>The Initial Conversation Was Not A Seizure.</u>

The Defendant was not seized when Detective Nolesco initially turned on his emergency lights and pulled his automobile next the Defendant.  When Detective Nolseco asked the Defendant for his identification, a seizure still had not occurred.  The Supreme Court has held that a suspect is not seized within the meaning of the Fourth Amendment until officers apply physical force or the suspect submits to a show of authority.  <u>United States v. Smith</u>, 396 F.3d 579, 587 (4th Cir. 2005), <u>citing</u> <u>California v. Hodari D.</u>, 499 U.S. 621, 626 (1991).  The Supreme Court in <u>Hodari</u> held as follows, "[t]he narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not." <u>Hodari D.</u>, 499 U.S. at 625.  This Circuit has followed this same line of precedent.  In <u>United States v. Lender</u> the Court held that an officer's "show of authority in calling for the defendant to stop is not a seizure when the defendant does not yield to that authority."  <u>United States v. Lender</u>, 985 F.2d 151, 154 (4th Cir. 1993).

Similarly, in the case before the Court, the officer's actions in asking the Defendant if he was "o.k." and further asking for identification, was not a seizure.  The Defendant did not stop nor yield to the alleged show of authority; instead he fled abruptly attempting to evade the officer.  There is no seizure when the defendant does not yield.

   2.   Det. Nolesco Had Probable Cause To Believe The Defendant Committed Traffic
        Violations.

Assuming *arguendo* that the Court determines that this was a seizure, the officer had probable cause to believe a traffic violation had occurred.  The Defendant was riding his bicycle in the middles of the street, crossing in and out of oncoming traffic, at 1:30am, in a high crime area, almost striking Det. Nolesco's automobile in a head on collision.

"If a police officer observes a traffic violation, he is justified in stopping the vehicle for long enough to issue the driver a citation and determine that the driver is entitled to operate his vehicle."  United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008).  The Supreme Court has also held that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  Whren v. United States, 517 U.S. 806, 810 (1996), citing, Delaware v. Prouse, 440 U.S. 648, 659 (1979); Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977).

Maryland Code §21 subtitle 12 provides the laws regarding the operation of bicycles. Maryland Code §21-1202 is titled, "Traffic laws apply to bicycles and motor scooters" and provides that "[e]very person operating a bicycle or a motor scooter in a public bicycle area has all the rights granted to and is subject to all the duties required of the driver of a vehicle by this title." (emphasis added)

Defendant Morris was riding a bicycle against the flow of traffic at 1:30am, nearly striking Detective Nolesco's automobile.  At this point Detective Nolesco had probable cause to believe several traffic violations had occurred.  Maryland Code §21-901.1 titled "[r]eckless and negligent driving" provides that "A person is guilty of reckless driving if he drives a motor vehicle: (1) In wanton or willful disregard for the safety of persons or property; or (2) In a manner that indicated a wanton of willful disregard for the safety of persons or property." It further provides that "A person is guilty of negligent driving if he drives a motor vehicle in a careless or imprudent manner that endangers any property or the life of any individual." Maryland Code §21-301 titled "Driving on right side of roadway," provides which side of the road Defendant Morris should have been riding.  Maryland Code §21-1205 provides that "[e]ach person operating a bicycle or a motor scooter at a speed less than the speed of traffic at the time and place and under the conditions then existing shall ride as near to the right side of the roadway as practicable and safe." (emphasis added)  This section also provides that a vehicle may not be driven on the left of the centerline of the roadway.  Maryland Code §21-301(c)(1). Defendant Morris committed any number of traffic violations, clearly giving this Detective enough probable cause to stop him.

Several courts have held that bicycles fall under this same standard for traffic stops.  In United States v. Banks, the Court held that an officer stopping a suspect for riding a bicycle without a headlight does not violate the fourth amendment. United States v. Banks, 553 F.3d 1101, 1104 (8th Cir. 2009).  In United States v. McFadden the Court held that Officers had probable cause to arrest and seize a suspect for riding his bicycle in violation of a traffic ordinance banning the riding of bikes on the sidewalk.  United States v. McFadden, 238 F.3d 198 (2nd Cir. 2001).  Finally, in Brooks v. Pembroke City Jail, a Court in this circuit held that

officers have probable cause to stop an individual for his erratic and potentially endangering bicycle riding along the roadway.  Brooks v. Pembroke, 722 F.Supp. 1294, 1298 (E.D.N.C. 1989).  Maryland traffic laws apply to bicycles, and the Defendant committed several traffic violations in the presence of the arresting Detective.  He was justified in attempted to stop the Defendant to speak with him.  Under Terry v. Ohio, the Detective would also have been justified in performing a limited pat-down of the Defendant before asking him anymore questions. Terry v. Ohio, 392 U.S. 1 (1968).  The Defendant was wearing all black clothing, including a black fleece jacket, riding his bike erratically in the middle of the street at 1:30AM and was unresponsive to initial questioning.  These are specific articulable facts that gave Detective Nolesco a reasonable belief that the Defendant was potentially dangerous.  He would have been justified in performing a limited pat down search for officer safety, had the Defendant not fled.

    3.   Detective Nolesco Was Permitted to Conduct an Investigative Stop after the Defendant's Unprovoked Flight.

    If this Court determines that Detective Nolesco did not have probable cause to stop the Defendant for the traffic violations, he surely was warranted in conducting an investigative stop after the Defendant's unprovoked flight.  The Defendant fled from this Detective, in a high crime area, while clutching his waistband.  This combined with the Defendant being unresponsive to a simple question would surely provide this Detective with a reasonable suspicion that criminal activity was occurring.

    "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."  United States v. Sokolow, 490 U.S. 1 (1989). Thus a stop and frisk is lawful only if it is conducted on the basis of a reasonable suspicion.

United States v. Crittendon, 883 F.2d 326 (4th Cir. 1989).  The presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting a police officer including all information available to an officer and any reasonable inferences to be drawn at the time of the decision to stop a suspect. Crittendon, 883 F.2d at 328, see, e.g., United States v. Cortez, 449 U.S. 411, 417-18 (1981).

This circuit has also held that unprovoked flight after officers identify themselves is enough to provide reasonable suspicion to initiate a forceful investigative stop.  United States v. Haye, 825 F.2d 32, 34 (4th Cir. 1987).  In Haye, two men arrived at Washington National Airport and drew the attention of Drug Enforcement Administration ("DEA") agents due to their nervous behavior.  Id. at 33  Agents followed these two men briefly, at one point approaching them and identifying themselves as DEA Agents. Id.  Both men immediately bolted in opposite directions after the agents identified themselves.  Id.  Neither one stopped until the agents began shouting that they would be shot unless they stopped.  Id.  The Court held that "all of the circumstances, including flight, furnished reasonable suspicion for a brief, involuntary, investigative stop." Id. at 34.

In United States v. Smith the Court similarly held, "Indeed, we have repeatedly recognized that evasive reactions to the presence of police may be considered in determining whether reasonable suspicion exists for an investigatory stop." United States v. Smith, 396 F.3d 579, 584 (4th Cir. 2005), citing United States v. Sims, 296 F.3d 284, 287 (4th Cir.2002) (holding that defendant's evasive behavior-which reasonably suggested he was hiding from officers and not simply "going about his business"-supported finding of reasonable suspicion for investigatory stop (alteration & internal quotation marks omitted)); United States v. Sprinkle, 106 F.3d 613, 618 (4th Cir.1997) ("Evasive conduct can, of course, assist an officer in forming

reasonable suspicion."); see also United States v. Humphries, 372 F.3d 653, 657, 660 (4th Cir.2004) (explaining, in context of probable cause analysis, that officers may consider "evasive conduct that falls short of headlong flight," such as walking away from approaching officers at a quick pace and ignoring commands to stop).  Defendant Morris fled after being asked a simply question.

The high crime nature of the area where the stop occurred also adds to the Detective's reasonable suspicion. United States v. Sprinkle, 106 F.3d 613 (1997).  In Sprinkle the Court held that "[a]lthough being seen in a high crime district carries no weight standing alone, 'an area's disposition toward criminal activity is an articulable fact,' that may be considered along with more particularized factors to support a reasonable suspicion." Sprinkle, 106 F.3d at 617, citing, United States v. Moore, 817 F.2d 1105, 1107 (4th Cir. 1987).

The Court in United States v. Amaker evaluated an investigative stop in light of both flight, and the defendant's presence in a high crime district. United States v. Amaker, 233 Fed.Appx. 238 (4th Cir. 2007).  In Amaker, officers patrolling a high crime area spotted a man counting money in an alley beside a bar and grill.  As they approached the man, they also spotted a female, Amaker.  The officer that spotted Amaker was in plain clothes, but had his police badge fully displayed on a chain around his neck.  When Amaker saw him she immediately began running in the opposite direction.  In light of these circumstances the Court held that the officers had sufficient articulable suspicion to stop Amaker. Id. at 239.

This case is very similar to the situation before the Court.  Defendant Morris was engaged in very suspicious behavior.  He was riding his bicycle in and out of oncoming traffic at 1:30AM nearly striking a police car, in a high crime district.  As the Detective pulled around to ask him if

he was ok, the Defendant did not answer, he only stared blankly back at the officer.  The Defendant then fled in the opposite direction, clutching his waistband as the Detective exited his car.  In several cases cited above, the defendant's unprovoked flight is enough to give rise to reasonable suspicion.  Under these circumstances, his flight while holding his waistband, the time of night, his heavy fleece jacket, his presence in a high crime district, and his erratic bicycle riding, are surely circumstances that gave this Detective sufficient articulable suspicion to investigate further.

    4.  <u>Defendant's Confession Was Voluntary.</u>

Defendant further moves this Court to suppress all statements.  As a threshold matter the Defendant does not state any facts or allegations which put the government on notice of why the Defendant's statements were involuntary, however the government will attempt to address the motion nonetheless.

The Defendant made two sets of statements. When the Detective caught the Defendant, following his flight, the Defendant made spontaneous oral statements.  After being transported back to the police station the Defendant made a written statement after being advised of his constitutional rights and signing a form waiving these rights.

Defendant's spontaneous statements are not barred by the Fifth Amendment.  This Circuit has held several times that "spontaneous statements which were not the product of interrogation were not barred by the fifth amendment."  <u>United States v. Wright</u>, 991 F.2d 1182, 1186 (4th Cir. 1993), <u>citing</u>, <u>United States v. Rhodes</u>, 779 F.2d 1019 (4th Cir. 1985), <u>see</u> <u>also</u> <u>United States v. Carico</u>, 311 Fed.Appx. 572 (4th Cir. 2008) (Spontaneous statements not made in response to any formal questioning by law enforcement are not barred by the Fifth Amendment.)

These cases follow the precedent set in <u>Rhode Island v. Innis</u>, where the Supreme Court held that statements that are not the product of interrogation are not barred by the Fifth Amendment. <u>United States v. Wells</u>, 231 Fed.Appx. 243, 246 (4th Cir. 2007), <u>citing</u>, <u>Rhode Island v. Innis</u>, 446 U.S. 291, 3000 (1980). Defendant Morris was not interrogated after he stopped fleeing from Detective Nolesco. He made spontaneous self-serving statements, not in response to any interrogation. These statements are not barred by the Fifth Amendment.

The Defendant's subsequent written confession is similarly not barred by the Fifth Amendment. The Defendant was advised of his *Miranda* rights and waived them. The waiver of *Miranda* rights is permissible, provided that the waiver is made "voluntarily, knowingly and intelligently." <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). The Defendant stated that he understood his rights, wished to make a statement without an attorney, had not been promised anything, and was not under the influence of drugs. He then proceeded to make a written statement to law enforcement. As he was advised of his rights, and waived them, his statement was voluntary. Without more specifically alleged facts, the government is unable to respond more specifically to the Defendant's motion to suppress statements.

**<u>Conclusion</u>**

Detective Nolesco's initial encounter with the Defendant did not rise to the level of a seizure until the Defendant was handcuffed following his unprovoked flight. Even so, the Defendant's actions in riding his bicycle into oncoming traffic at 1:30 am violated several traffic laws, and these infractions were committed in front of a police officer. Detective Nolesco was justified in speaking with the Defendant about these violations. Defendant Morris continued his suspicious behavior during the initial conversation, and fled the scene. The combination of the

time of night, the Defendant's previous actions, the high crime location, and the Defendant's unprovoked flight gave Detective Nolesco reasonable suspicion to believe criminal activity was occurring and warranted an investigative stop.  As the Defendant fled he was clutching his waistband, justifying a brief pat down for officer safety.  Finally, the Defendant made spontaneous oral statements without being interrogated, and signed an advice of rights waiver form before making his written statement.  For these reasons the Government respectfully requests that this Court deny the defendant's motions.


Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By: __/s/_____
Kevin L. Rosenberg
Special Assistant United States Attorney
United States Courthouse, Suite 400
6500 Cherrywood Lane
Greenbelt, Maryland 20770
(202) 445-9850