```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                       SOUTHERN DIVISION



UNITED STATES OF AMERICA     .   Criminal Case No. RWT-10-0029
                             .
    v.                       .
                             .   Greenbelt, Maryland
MARCUS HERMAN MORRIS,        .
                             .
            Defendant.       .   Friday, August 5, 2011
. . . . . . . . . . . . . .      12:05 p.m.




                    TRANSCRIPT OF SENTENCING
              BEFORE THE HONORABLE ROGER W. TITUS
                  UNITED STATES DISTRICT JUDGE




APPEARANCES:

FOR THE GOVERNMENT:          KEVIN L. ROSENBERG, ESQ.
                             ROBERT K. HUR, ESQ.
                             Office of the United States Attorney
                             U.S. Courthouse, Suite 400
                             6500 Cherrywood Lane
                             Greenbelt, Maryland 20770




FOR THE DEFENDANT:           HARRY TUN, ESQ.
                             Law Office of Harry Tun
                             400 5th Street, N.W., Suite 300
                             Washington, D.C. 20001




OFFICIAL COURT REPORTER:  GLORIA I. WILLIAMS   (301) 344-3228

        COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES
```

P R O C E E D I N G S

    THE COURT:  Good afternoon.  Please be seated.

    MR. ROSENBERG:  Your Honor, calling the case of United States of America v. Marcus Morris, case No. 10-0029.

    MR. TUN:  Good afternoon, Your Honor.  Harry Tun on behalf of Mr. Morris, who is present.

    MR. ROSENBERG:  And Kevin Rosenberg and Rob Hur on behalf of the United States, Your Honor.

    THE COURT:  All right.  We're here for sentencing.  I have signed the order authorizing the filing of your sentencing memorandum, Mr. Tun.

    MR. TUN:  Thank you so much, Your Honor.

    THE COURT:  I have reviewed the presentence report.  I want to confirm with counsel that they have reviewed it and you've reviewed it with your client.  Is that correct, Mr. Tun?

    MR. TUN:  Yes, Your Honor.

    THE COURT:  Government, you've had a chance to review the presentence report?

    MR. ROSENBERG:  Yes, Your Honor.

    THE COURT:  All right.  And I have also received and reviewed the sentencing memoranda presented by both parties and I first want to review it in terms of the presentence report whether there are any disagreements between the parties as to the factual content of the report.

    MR. TUN:  No, Your Honor.  The calculation is the

1  correct calculation.
2          THE COURT:  No.  I understand there's a guideline
3  issue, but I just want to make sure that there's no factual
4  disputes about the content of the report.
5          MR. ROSENBERG:  No, Your Honor.
6          MR. TUN:  No, Your Honor.
7          THE COURT:  All right.  Now, the probation officer has
8  calculated the offense level at 22 after adjustments for
9  acceptance of responsibility as reflected in paragraph 26 on
10 page 5 and I understand, Mr. Tun, that you have an issue with
11 respect to the criminal history; is that correct?
12         MR. TUN:  It was the offense level, Your Honor, but
13 actually that --
14         THE COURT:  I'm sorry.  It's offense level, yes, the
15 base offense level.  You're contesting the --
16         MR. TUN:  Actually, what I'm trying to argue, probably
17 unartfully, is that the two felonies that the presentence writer
18 counted actually is under the Maryland statute.  One is a felony
19 and one is -- the other one is a misdemeanor.  Distribution is a
20 felony, but fleeing and eluding is a misdemeanor.  However, his
21 sentence were over one year.  So, it may be that under the
22 federal sentencing guideline, they might think that because it's
23 over one year, it is a felony -- count as a felony.  What I'm
24 trying to say is that it is overstated of actual conviction,
25 Your Honor.

1          THE COURT:  All right.  Any further argument on that?
2          MR. TUN:  No, Your Honor.
3          THE COURT:  Let me hear from the government on the base
4  offense level.
5          MR. ROSENBERG:  Thank you, Your Honor.  The government
6  would first just reference its brief.  But, second, in response
7  to Mr. Tun's argument, I believe it's the 12-10-2006 conviction
8  which Mr. Tun takes issue with which he claims is a misdemeanor.
9  However, because it carries a sentence above one year, it's a
10 felony.  In the attached documents that the government filed
11 with its brief, it referenced the statement of probable cause,
12 which makes note that this offense involved a fleeing and
13 eluding through a vehicle where the defendant also crashed into
14 at least one police officer's cruiser.  This is an offense which
15 the defendant was convicted of.  It carries a punishment of at
16 least one year and I don't believe that this would overstate --
17 that the guideline range would overstate his criminal history
18 level considering the violent nature of this offense, which was
19 a felony.
20         So, in that event, the government would ask the court
21 to follow the guideline range which the probation officer and
22 the probation department recommended, which would be a level 22,
23 criminal history category four.
24         THE COURT:  All right, Mr. Tun.
25         MR. TUN:  Your Honor, there are many, many crimes --

1  under the state of Maryland statute there are many, many crimes
2  that are enumerated as a misdemeanor carrying more than a one-
3  year sentence, for example, second degree assault.
4          THE COURT:  But under the guidelines, the question is
5  not what Maryland may call it.  The question is, is it
6  punishable by more than one year in prison?
7          MR. TUN:  I agree, Your Honor.
8          THE COURT:  Under the guidelines, the answer to that
9  question is not going to be determined by the adjective or noun
10 used by Maryland.  It's going to be is it punishable by more
11 than one year.
12         MR. TUN:  That is correct, Your Honor.  I know that,
13 but that's why I'm saying that it's -- that's why I said what I
14 said.
15         THE COURT:  All right.  Well, I have considered the
16 objections by the defendant to the guideline calculation of the
17 probation officer as reflected in paragraph 19 on page 4 where
18 it assesses a base offense level of 24 because of two felony
19 convictions for either a crime of violence or a controlled
20 substance offense.  I have considered the arguments and I find
21 that that assignment of the offense level was appropriate in
22 this case and I believe that it's appropriate for all the
23 reasons set forth in the government's sentencing memorandum,
24 which I adopt in its entirety in terms of the analysis, plus
25 the -- and the application of the modified categorical approach

1  based upon these documents submitted by the government makes it
2  entirely proper that this offense level was determined at the
3  level indicated.
4        Now, the probation officer has evaluated the
5  defendant's criminal history and has made a determination that
6  it is criminal history category four.  Any disagreement on that?
7        MR. TUN:  No, Your Honor.
8        MR. ROSENBERG:  No, Your Honor.
9        THE COURT:  All right.  Having applied the guidelines,
10 therefore, that then produces at offense level 22 and criminal
11 history category four a guideline range of from 63 to 78 months.
12 That is the beginning and the ending point of the sentencing
13 process.  But I've applied the guidelines.  That's the
14 recommended range and I'll be glad to hear from you, Mr. Tun,
15 with respect to sentence.
16       MR. TUN:  Your Honor, as I stated in my memorandum,
17 Your Honor, Mr. Morris picked up this charge in the nighttime
18 while he was riding a bicycle.  As stated in the presentence
19 memorandum, Your Honor, he found a gun while he was urinating
20 and he picked it up.  He put it in his belt.  It doesn't appear,
21 Your Honor, that he was intending to use it for anything, but he
22 should have known that he shouldn't have a gun because he's
23 ineligible for carrying a gun by virtue of prior conviction.
24       However, Your Honor, as Your Honor looks at this
25 particular case, it's different from any other case such as like

1   the one I had before Your Honor, a trial before with a AK47.

2   It's not that type of case.  There's no shooting involved and

3   nothing.  He cooperated with the police officer.

4          Your Honor, we have a family member in the courtroom,

5   father, mother, sister, brother, who are supporting my client.

6          Also, because of the way sentencing guidelines

7   structured, he got a two-level bump.  I would respectfully state

8   that it overstates his criminal offense level.  And also the

9   fact that, as I stated in my memorandum, when he pled guilty to

10  those charges, he thought it was a misdemeanor but,

11  unfortunately, the way it turned out is a felony.

12          I respectfully request, Your Honor, under the

13  appropriate section of 13 -- court's indulgence -- 3553 and

14  reduce the sentence to 51 months in this matter, Your Honor.

15          THE COURT:  Would your client like to address the

16  court?  I'll be glad to hear from him.

17          THE DEFENDANT:  If I may.  Your Honor, I made a major

18  mistake of reacting on the thought I could transfer a found

19  firearm away from a nearby school where my little girl plays to

20  the police station, which is on the way to my mom's house.

21  Being that my phone battery had died, my reaction was just that.

22  So I headed for the police station.  No more than a half a mile

23  into my journey, which took less than two minutes, I was

24  approached by an officer after crossing the street with my

25  bicycle.  At that point I acknowledged his authority and

1  surrendered my license, explaining the situation calmly.

2      Now that I have been through this ordeal and
3  incarceration, I have realized I am not an authorized person to
4  handle a situation of such nature and in hindsight I should have
5  thought longer of a better way to contact the police.  They are
6  trained and experienced in handling found items.

7      This experience has caused pain to myself, my family
8  and, most of all, time away from my children.  Life is about
9  decisions and the effects those decisions has on one's life and
10 I'm ready to give back to my family, my children and society so
11 I can put forth this burning desire to make better decisions
12 that will affect myself, my children, and my family's life in a
13 positive direction, being a positive role model as well as a
14 dad, a father, a provider, and a model citizen.  Thank you.

15      THE COURT:  All right.  Government.

16      MR. ROSENBERG:  Thank you, Your Honor.  The government
17 takes issue with a few statements made about the facts
18 surrounding this arrest.  As the court may remember from the
19 suppression hearing, this officer was patrolling a high crime
20 neighborhood in the dark when he saw the defendant riding his
21 bike in and out of traffic in dark clothing and when the officer
22 approached the defendant, the defendant had a blank look on his
23 face and then fled, leaving his bike, running on foot while
24 clutching his waistband.  This was sworn testimony.  We have
25 already heard it in this court.  It seems to take issue with the

1   defendant's version of events.

2          This was a firearm which was loaded which was in a
3   holster.  It seems implausible that the defendant would happen
4   to find the firearm late at night while he was riding in this
5   high crime neighborhood and then flee from this officer if this
6   was just a firearm that he had found.  Also, the officer
7   explained that the direction that the defendant was riding his
8   bike was actually in the opposite direction of the nearest
9   police station.

10          We would also ask the court to note that the defendant,
11  once he was arrested on this offense, had a failure to appear
12  warrant.  I believe this was what the conviction for the Bail
13  Reform Act mentioned in paragraph 37 of the presentence report
14  references, that the defendant failed to appear and there was a
15  Bail Reform Act violation which he was convicted of in the
16  District of Columbia after he failed to appear I believe on this
17  case.

18          It seems that the defendant is now attempting to escape
19  the acceptance of responsibility that the government believed he
20  was here to accept.

21          The defendant has a history of violence and fleeing
22  from police officers as the government mentioned in the
23  12-10-2006 conviction where he fled at a high rate of speed in a
24  vehicle in heavy traffic areas, crashing into a police officer.

25          The government simply points this out and requests a

1 sentence within the guideline range as calculated by the
2 probation department as referenced by the court. The government
3 doesn't feel a variation down to 51 months would be an adequate
4 sentence.
5      THE COURT: Say that again. I didn't hear the last
6 thing you said.
7      MR. ROSENBERG: The government doesn't believe that the
8 requested variance that Mr. Tun -- Mr. Tun asked the court to
9 vary down to 51 months and the government doesn't believe that
10 this sentence would adequately represent the defendant's conduct
11 as well as his criminal history, which includes these drug
12 trafficking and violent offenses, including fleeing from
13 officers in an automobile and striking officers with said
14 automobile.
15      So, in light of that, the government just requests that
16 the court hand down a guideline sentence.
17      THE COURT: All right. The defendant appears before me
18 today for sentencing after having entered a plea of guilty to a
19 single count of possession of a firearm by a convicted felon and
20 I have applied the guidelines as the first step in the
21 sentencing process and it has produced a recommended range of
22 sentence of 63 to 78 months. Counsel for the defense argues
23 that that is greater than necessary to meet the criteria for
24 sentencing set forth in Section 3553(a)(2) of Title 18, United
25 States Code, and urges that a sentence of 51 months be imposed

1  instead.

2  In making a determination of whether a sentence in the
3  guideline range is appropriate, I have to follow the overall
4  command of that law and fashion a sentence that is sufficient
5  but not greater than necessary to comply with the purposes set
6  forth therein.  I will address those factors as they relate to
7  this defendant and then determine whether a guideline sentence
8  would be appropriate or some other sentence.

9  The seriousness of the offense is not something I can
10  argue with.  I mean, this is a gentleman who is a convicted
11  felon.  His story about finding a weapon is implausible.  If he
12  really were going to take it to the police station, I can't for
13  the life of me understand why it would have a full magazine and
14  a bullet in the chamber.  So it's a very serious crime.  The
15  state and federal laws preclude possession of firearms by
16  felons.  There should be no question since this is a multiply-
17  convicted felon that he should not have had a weapon under any
18  circumstances.  He could simply call the police and say there's
19  a weapon there, come get it.  So I find his story hopelessly
20  implausible.  But it's a very serious offense.

21  I'm required to fashion a sentence that will promote
22  respect for the law and afford adequate deterrence.  It is
23  obvious with this defendant's fairly extensive criminal record
24  that he has not been deterred by the punishment he's received to
25  date and the punishment he's received largely in the Maryland

1  state system has been fairly lenient, to put it mildly, and he's
2  never really had to taste any significant punishment for this
3  long series of crimes.
4      I'm required to consider the need to protect the public
5  from further crimes of the defendant.  In this case we have
6  possession of a dangerous and fully loaded weapon ready to fire
7  and this is in the wake of prior convictions for conduct
8  involving fleeing and eluding, very dangerous behavior, and I
9  therefore conclude that incarceration is required for the
10 protection of the community.
11     I'm required to consider the need to provide the
12 defendant with needed educational or vocational training,
13 medical care or other correctional treatment in the most
14 effective manner.  I conclude that that would best be done in
15 this case in an incarcerated setting where he can hopefully
16 refocus his life away from a life of crime, develop sufficient
17 vocational skills, that he'll be employable and move on with his
18 life.  He does have family responsibilities.  He ought to return
19 to them as promptly as possible.
20     I'm required to consider the need to avoid unwarranted
21 sentencing disparities among defendants with similar records who
22 have been found guilty of similar conduct and that, of course,
23 is one of the principal functions of the guidelines which are
24 very helpful in meeting that goal.
25     And, finally, the need to provide restitution to any

1  victims, and that's not really applicable in this case and I
2  won't further address that factor.
3           Having considered all of those factors, I believe that
4  the guidelines very well capture an appropriate sentence in this
5  case that is sufficient but not greater than necessary and while
6  I conclude that a guideline sentence is appropriate and does
7  meet the factors in Section 3553(a)(2), I believe that a
8  sentence at the low end of the guidelines is appropriate and
9  therefore I'll impose a sentence of 63 months.
10          Mr. Tun, is there any request for place of
11 incarceration?
12          MR. TUN:  Yes, Your Honor.  My client, Your Honor, as
13 Your Honor knows, a college student once was, with a scholarship
14 and everything.  He would like to go to Butner so that he can
15 get vocational training.  I know that in Butner at least one of
16 my client came out of there and become plumber.  So he would
17 like to go to Butner to -- if Your Honor can recommend that.
18          THE COURT:  Because of their vocational facilities?
19          MR. TUN:  They have -- as far as I know, they have HVAC
20 program down there.  It's very, very good, and also a plumbing
21 program that's very, very good, and that's what he would like to
22 learn so that when he come out, he will be better equipped to
23 deal with a family and supporting his family.
24          THE COURT:  Any objection by the government?  I'll
25 recommend Butner, then.

1        MR. ROSENBERG:  No objection, Your Honor.

2        THE COURT:  Okay.

3        MR. TUN:  Also, Your Honor, that Your Honor --

4        THE COURT:  And you want me to recommend vocational
5 training, right?

6        MR. TUN:  Right.  Also, Your Honor, if Your Honor
7 would -- credit for time served.  He has been incarcerated quite
8 some time, since he was arrested in this case, as well as any
9 credit that he should get the time that he spent in jail.  I
10 don't know how many -- I think it might not be --

11       THE COURT:  Well, the Bureau of Prisons will make that
12 determination.  They have to assess the reasons why he was in
13 custody.  I can't do that.  I do know that he's been in custody
14 as a federal detainee since June of 2010.  If there's additional
15 time beyond that, the Bureau of Prisons can evaluate that and
16 assess it as appropriate.

17       MR. TUN:  Your Honor, the problem I'm saying is that
18 sometimes when my client spent on same charge -- he was arrested
19 in P.G. County and on the same charge sometimes Bureau of
20 Prisons will not apply unless Your Honor state it in your order,
21 because he did spend some time in P.G. County.  I don't know how
22 many days or weeks before he got bonded out.

23       THE COURT:  What's the government's position on that?

24       MR. ROSENBERG:  Your Honor, the government would object
25 to any time credited to the defendant's sentence where he wasn't

1   in federal custody on this case.

2           MR. TUN:  That's a typical application that every
3   single -- I have done similar cases in federal court.  In fact,
4   judges applying time my client served in Columbia to apply to
5   this case was as a request of the government.  In this case,
6   Your Honor, it's a similar application where my client was
7   charged with the same case he was incarcerated except that the
8   federal decided to pick up after some months.

9           THE COURT:  Well, there's a number of problems with
10  that, Mr. Tun.  You've got the Bail Reform Act incarceration
11  that -- he shouldn't get any credit for that.  That was 90 days
12  from March 2010.

13          MR. TUN:  I'm not talking about that case, Your Honor.
14  I'm talking about the time when he was arrested in this case
15  while he was in the P.G. County jail.

16          THE COURT:  Mr. Tun, I'll let the Bureau of Prisons
17  make that determination.  I'll impose the sentence and they can
18  make a determination of when it should commence.  I just don't
19  have enough information.  I certainly don't believe it should be
20  taking him all the way back to his original state arrest when
21  there's an intervening period at the minimum of a Superior Court
22  sentence of 90 days.

23          MR. TUN:  I'm not asking Superior Court 90 days be
24  included.  What I'm asking is that the time that he was arrested
25  when he was in P.G. County by the P.G. County police officer.

1  That's what I'm asking.

2          THE COURT:  Well --

3          MR. TUN:  It's no different from -- I had a case in the
4  District of Columbia where my client was in Columbia and at the
5  request of the government, Columbia government held the
6  defendant in jail and those times are counted even though
7  they're not in the Bureau of Prisons or federal government
8  custody.

9          THE COURT:  What is the government's position with
10 respect to any period of time for which he was in state custody
11 for this offense as opposed to that Superior Court 90 days?

12         MR. ROSENBERG:  Your Honor, our position is still that
13 the defendant should only get -- should not get credit for any
14 time where he was serving on a sentence not related to this
15 federal indictment.

16         THE COURT:  I'm not talking about his sentence.

17         MR. ROSENBERG:  Yes.

18         THE COURT:  My understanding is -- correct me if I'm
19 wrong -- that the charge set forth in paragraph 45 on page 9 --
20 is that this case?

21         MR. TUN:  Yes, Your Honor.  This is the same case.

22         THE COURT:  Correct?

23         MR. ROSENBERG:  Yes.

24         THE COURT:  What I don't know is when he was arrested
25 in that case.  It says 9-10-09, but then you've got a bench

1   warrant being issued on March 19, 2010.  So I don't know where
2   he was.  I don't know if he was detained.
3           MR. TUN:  Your Honor, what happened is he was detained
4   for a period of time and then he was released when the family
5   posted bond.  So, the time that he was until released when they
6   posted bond, that's the time I'm asking for, because it's
7   directly related to this case.  And it has been done in many
8   other jurisdictions, Your Honor, including District of Columbia.
9           THE COURT:  That would be a very brief period of time,
10  if I understand you correctly.
11          MR. TUN:  Still, Your Honor.  It was a brief time, but
12  it should be returned to my client.  Whatever date that could
13  count against my client should be counted against him -- should
14  be included.
15          THE COURT:  Mr. Tun, I can't see any indication on the
16  circuit court records for Prince George's County as to when he
17  or what period of time, if any, he was incarcerated.  He had an
18  initial arraignment and that was on December 4, 2009.  The
19  charges were listed.  It looks like there was a surety bond
20  filed with the court on November 13, 2009.  So that would be
21  like three days at the most that I can see and then the bond was
22  forfeited when he didn't appear on the circuit --
23          MR. TUN:  Well, Your Honor, surety bond posted November
24  14th and then he was arrested on September 10, 2009.  Then that
25  would be like about a month.

1        THE COURT:  Mr. Tun, I don't have the ability to
2   determine from the records that are publicly available the
3   period of time he was incarcerated.
4        MR. TUN:  Your Honor, would Your Honor permit me to
5   supplement that information, then?
6        THE COURT:  Well, what I can do is to put in that the
7   Bureau of Prisons should consider credit for any period of state
8   custody --
9        MR. TUN:  That will be fine, Your Honor.
10       THE COURT:  And then they're going to have to make that
11  determination.
12       MR. TUN:  That will be fine.
13       THE COURT:  Does your client wish to participate in the
14  500-hour drug program?
15       MR. TUN:  Yes, Your Honor.
16       THE COURT:  All right.  I will recommend him for that.
17       All right.  Well, to summarize, then, in terms of this
18  custody, the period of incarceration is 63 months.  I'll
19  recommend that he participate in the 500-hour residential drug
20  abuse program.  I'll recommend he be designated to Butner.  I'll
21  recommend that he be provided suitable vocational training.
22  I'll ask the Bureau of Prisons to consider giving him credit for
23  any period of state custody for the charges that were later
24  filed in this court but only for that period of time.
25       MR. TUN:  Yes, Your Honor.

1       THE COURT:  I will place him on a period of supervised
2  release when he finishes his period of incarceration of three
3  years with the mandatory and standard conditions of supervision,
4  with the additional provisos that he participate satisfactorily
5  in a mental health treatment program, also in a substance and/or
6  alcohol program, and that he pay the special assessment of a
7  hundred dollars if he's not previously done so.  In light of the
8  defendant's financial circumstances, I will not impose any fine
9  and I will impose the mandatory special assessment of $100.
10      Mr. Morris, you have a right to appeal your conviction
11 and sentence to the United States Court of Appeals for the
12 Fourth Circuit.  If you wish to do so, you must do so within 14
13 days.  Otherwise, your right to appeal will be waived.  If you
14 are unable to pay the filing fee under the procedures, Mr. Tun
15 or the clerk of the court can explain you can have the filing
16 fee waived.
17      I do wish to point out to you that under paragraph 15
18 of your plea agreement, you have waived your right to appeal
19 your conviction except that you reserved the right to challenge
20 this court's order denying the motion to suppress evidence, and
21 with respect to the sentence, you have not waived your right to
22 appeal because the offense level that I utilized was more than
23 18 as provided in your plea agreement.  So you are entitled to
24 challenge your sentence on appeal.  Do you understand that?
25      THE DEFENDANT:  Yes, I do.

1        THE COURT:  Anything further, counsel?

2        MR. TUN:  No.

3        MR. ROSENBERG:  Nothing, Your Honor.

4        THE COURT:  Are there any open counts or is that just

5   one count?

6        MR. ROSENBERG:  I believe that's the only count, Your

7   Honor.

8        THE COURT:  All right.  Thank you very much.

9        (Proceedings adjourned at 12:40 p.m.)

10                       CERTIFICATE OF REPORTER

11       I hereby certify that the foregoing is a true and

12   accurate transcript of proceedings in the above-entitled matter,

13   to the best of my knowledge and ability.

14

15

16                             _____/s/_____
                               Gloria I. Williams
17                             Official Court Reporter

18

19

20

21

22

23

24

25